UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. 2:01-CR-288-1 |
| | § | (CIVIL ACTION NO. 2:16-CV-96) |
| BRIAN MATTHEW STARR | § | |

**ORDER DENYING MOTION TO VACATE, SET-ASIDE OR CORRECT SENTENCE
AND DENYING A CERTIFICATE OF APPEALABILITY**

Brian Matthew Starr (Starr) filed a motion vacate, set-aside or correct sentence pursuant to 28 U.S.C. § 2255. D.E. 35. The government filed a response and additional documentation of Starr's previous convictions. Starr supplemented his briefing. D.E. 96, 97, 99, 100. For the reasons stated herein, the § 2255 motion is denied and he is denied a certificate of appealability.

### I. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 2255.

### II. BACKGROUND AND CLAIMS

Starr and two others were charged with being felons in possession of multiple firearms in September 2001. D.E. 1. Starr pleaded guilty in October 2001 and was sentenced pursuant to 18 U.S.C. § 924(e) (Armed Career Criminal Act of ACCA) to 150 months in the Bureau of Prisons.[1]

The Presentence Investigation Report (PSR) identified three Arkansas burglary convictions in 1994 and 1996, and an Arkansas arson conviction in 1999 as predicate offenses to enhance Starr's sentence as an armed career criminal. D.E. 45, ¶¶ 19, 28, 31. Starr's actual criminal history category was VI, the same as for a career criminal pursuant to U.S.S.G. § 4B1.4(c)(1). His sentencing guideline range was 188 to 235 months imprisonment, with a minimum statutory sentence of 180 months.

---

[1] The government moved for a downward departure that the Court granted.

Judgment was entered on the docket on February 12, 2002. D.E. 55. Starr filed the present motion on March 14, 2016. *See* Rule 3(d).[2]

### III.  MOVANT'S CLAIMS

Starr argues that his sentence is unconstitutional in light of *Johnson v. United States*, 135 S.Ct. 2551 (2015), and his burglary and arson convictions no longer qualify as violent felonies pursuant to § 924(e).

### VI.  ANALYSIS

**A.    28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: 1) constitutional issues, 2) challenges to the district court's jurisdiction to impose the sentence, 3) challenges to the length of a sentence in excess of the statutory maximum, and 4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).

**B.    *Johnson* Claim**

Starr argues that his burglary and arson convictions no longer qualify as predicate offenses under the ACCA after *Johnson*. *Johnson* held that the residual clause of the definition of violent felony in 18 U.S.C. § 924(e)(1)(ii) was unconstitutionally vague. The Act defines "violent felony" as follows:

> any crime punishable by imprisonment for a term exceeding one year ... that—

---

[2] Rules Governing Section 2255 Proceedings For the United States District Courts (2016).

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*.
>
> § 924(e)(2)(B). The closing words of this definition, italicized above, have come to be known as the Act's residual clause.

*Johnson*, 135 S.Ct. at 2555-56 (emphasis in *Johnson*). "Today's decision does not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony." *Id.*, 135 S.Ct. at 2563.

    **1.**    *Categorical approach*

Burglary and arson are among the enumerated crimes in § 924(e)(2)(B)(ii) and are not affected by the *Johnson* decision. However, just because Arkansas labelled these crimes burglary or arson does not mean that they automatically qualify as a predicate offense. It is only when the conviction is a "generic" burglary or arson that the enumerated offense applies. *Shepherd v. United* States, 544 U.S. 13 (2005); *Taylor v. Unite States*, 495 U.S. 575, 598 (1990).

The categorical approach compares the elements of the offense of conviction with the elements of a generic offense to determine if there is a sufficient match. *Mathis v. United States*, 136 S.Ct. 2243, 2248 (2016) (citing *Taylor*, 495 U.S. at 600-01). When the statute of conviction is broader than the generic crime, the statue of conviction may not form a basis for enhancement. *See Mathis*, 136 S.Ct. at 2251, 2257 ("Because the elements of Iowa's burglary law are broader than those of generic burglary, Mathis's convictions under that law cannot give way to an ACCA sentence.").

*Shepherd* noted an exception to the categorical approach "if the indictment or information and jury instructions show that the defendant was charged only with a burglary of a building, and

that the jury necessarily had to find an entry of a building to convict .... Only then might a conviction under a 'nongeneric' burglary statute qualify as an ACCA predicate." *Id*., at 17.

### 2.   *Burglary*

Starr was convicted of Arkansas residential burglary in violation of Arkansas Code 5-39-201(a), Cause No. 94-783 committed on May 28, 1994; commercial burglary, Arkansas Code §5-39-201(b)(1), Cause No. 94-783, committed on April 11, 1994; and commercial burglary, Arkansas Code 5-39-201(b)(1), committed on June 3, 1994, Cause No. 94-783. *See* D.E. 99-2.[3]

#### a.   *Residential burglary*

At the time of Starr's burglaries, the Arkansas residential burglary statute read as follows:

(a)   A person commits residential burglary if he or she enters or remains unlawfully in a residential occupiable structure of another person with the purpose of committing in the residential occupiable structure any offense punishable by imprisonment.

Ark. Code Ann. § 5-39-201(a); *United States v. Robinson*, 2016 WL 6208276 at *2 (E.D. Ark. Oct. 20, 2016) (slip op.). "Section 5–39–201(a) encompasses two separate and distinct elements, the first being the illegal entering of the residence and then, second, having the purpose to commit a felony in that residence." *Sherman v. State*, 448 S.W.3d 704, 711 (Ark. 2014). Arkansas defines "residential occupiable structure" to mean "a vehicle, building, or other structure: (i) In which any person lives; or (ii) That is customarily used for overnight

---

[3] Although the burglaries were prosecuted and sentenced in the same cause number, they each occurred on different dates and at different locations. "Under the ACCA, each distinct 'criminal episode'—as opposed to a 'continuous course of conduct'—is a separate predicate offense, regardless of the 'date of the convictions or the number of trials or pleas resulting in those convictions.'" *United States v. Mason*, 440 F.3d 1056, 1057–58 (8th Cir. 2006). The Eighth Circuit also holds "that a criminal offense is a distinct criminal episode when it occurs in a different location and at a different time." *United States v. Chappell*, 704 F.3d 551, 552 (2013). *Accord United States v. Ressler*, 54 F.3d 257, 259-260 (5th Cir. 1995) (focusing on whether the crimes were committed simultaneously or sequentially); *United States v. Medina-Gutierrez*, 980 F.2d 980, 982 (5th Cir. 1992); *United States v. Herbert*, 860 F.2d 620, 622 (5th Cir. 1988) (holding that "multiple convictions arising from multiple criminal transactions should be treated as separate convictions, regardless of the number of judicial proceedings involved in the conviction.").

accommodation of a person whether or not a person is actually present." Ark. Code Ann. § 5–39–101(4)(A).

*Taylor* described the generic, contemporary meaning of burglary to include at least the following elements: "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Id*., 495 U.S. at 598. "We conclude that a person has been convicted of burglary for purposes of a § 924(e) enhancement if he is convicted of any crime . . . having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Id*. at 600.

The Felony Information charged Starr with residential burglary: "defendant unlawfully and feloniously entered or remained in a residential occupiable structure of another person with the purpose of committing therein an offense punishable by imprisonment to-wit: On May 28, 1994, the defendant . . . entered the Kappa Alpha Fraternity House and committed a theft therein." D.E. 99-1, p. 2. Starr's judgment recited that he pleaded guilty and "acknowledged the factual bases for charge(s)." D.E. 99-2, p. 2.

This Court is not required to determine whether Arkansas residential burglary is a generic burglary[4] because the charging instrument specified that Starr was charged with burglary of the Kappa Alpha Fraternity House. To admit the factual basis of the crime, he had to admit to entering that specific house. As a result, the exception in *Shepherd* applies—Starr admitted that

---

[4] In an illegal reentry case, the Fifth Circuit held in 2006 that the Arkansas statute was not generic burglary because it included a broader definition of occupiable structure than a residential dwelling. *United States v. Mendoza-Sanchez*, 456 F.3d 479, (5th Cir. 2006) ("The Arkansas definition of "occupiable structure," *see* Ark. Code Ann. § 5-39-101, like the Texas definition of 'building,' includes structures used for purposes other than 'dwelling' The Arkansas offense of burglary cannot therefore be considered the equivalent of the enumerated offense of burglary of a dwelling."). Unlike the Fifth Circuit, the Sixth Circuit held that a conviction for Arkansas residential burglary was a proper predicate offense. *United States v. Bias*, 569 Fed. App'x. 632, 634-35 (6th Cir. June 30, 2014) (unpublished). In a recent lengthy opinion, the district court in *Robinson* found that the Arkansas residential burglary statute was not divisible and qualified as generic burglary. *Id*. at *6-7.

his burglary was of a house, not a vehicle. As a result, his potentially otherwise non-qualifying predicate offense qualifies. But even if the residential burglary did not qualify, Starr was convicted of two commercial burglaries and arson. If they qualify, Starr still has three predicate convictions.

### b. *Commercial burglary*

At the time of Starr's convictions, the commercial burglary statute in Arkansas read as follows: "A person commits commercial burglary if he or she enters or remains unlawfully in a commercial occupiable structure of another person with the purpose of committing in the commercial occupiable structure any offense punishable by imprisonment." Ark. Code Ann. § 5-39-201(b). The commercial burglary statute is not hampered by the broad definition that applied to residential burglary. Using *Taylor's* definition of generic burglary, Starr was convicted of generic burglary in all three instances and they all form proper predicates for his enhancement.

### 3. *Arson*

Starr was convicted of arson in 1999 pursuant to Arkansas Code § 5-38-301. D.E. 99-4. The statute was amended in 1997 to read as follows:

> § 5–38–301. Arson
>
> (a) A person commits arson if he starts a fire or causes an explosion with the purpose of destroying or otherwise damaging:
>   (1) An occupiable structure or motor vehicle that is the property of another person; or . . .
> (b) For purposes of this section, "motor vehicle" means every self-propelled device in, upon, or by which any person or property is, or may be, transported or drawn upon a street or highway.

Starr's Felony Information charged Starr with: "start[ing] a fire with the purpose of destroying or damaging a motor vehicle that belonged to someone else, in violation of ACA § 5-38-301, to-wit: burn[ing] up a car owned by [victim] valued in excess of $8000." D.E. 99-3. The

Arkansas statute is partially divisible as to the numbered subsections, but not as too starting a fire or causing an explosion—they are alternate means of causing damage to the various divisible types of property to be damaged. *See Mathis v. United States,* 136 S.Ct. 2243, 2249-50 (2016).

The Eighth Circuit "conclude[d] that the generic offense of arson, for purposes of the sentence enhancement in § 924(e), has as elements the malicious burning of real or personal property of another." *United States v. Whaley*, 552 F.3d 904, 907 (8th Cir. 2009). The Fifth Circuit "join[ed] our sister Courts of Appeals in holding that the generic, contemporary definition of arson involves a willful and malicious burning of property." Starr's conviction, as narrowed by the felony information, charged him with violating 5-38-301(a)(1), starting a fire or causing an explosion with the purpose of destroying an occupiable structure or motor vehicle that is the property of another person. The Model Penal Code includes the following language:

> A person is guilty of arson, a felony of the second degree, *if he starts a fire or causes an explosion* with the purpose of:
> (a) destroying a building or occupied structure of another; or
> (b) destroying or damaging any property, whether his own or another's, to collect insurance for such loss. It shall be an affirmative defense to prosecution under this paragraph that the actor's conduct did not recklessly endanger any building or occupied structure of another or place any other person in danger of death or bodily injury.

Uniform Model Penal Code § 220.1 (2015) (emphasis added).

Starr argues that because the Arkansas statute includes explosion that it is not a generic arson. This Court finds that Starr was convicted of generic arson which properly is considered a predicate offense for sentencing pursuant to § 924(e). Starr's sentence was properly enhanced as an armed career criminal pursuant to § 924(e).

## V. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). Although Starr has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 Rules.

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

The Court finds that Starr cannot establish at least one of the *Slack* criteria. Accordingly, he is not entitled to a COA as to his claims.

## VI. CONCLUSION

For the foregoing reasons, Starr's motion (D.E. 35) is DENIED pursuant to Rule 4(b). Additionally, he is DENIED a Certificate of Appealability.

SIGNED and ORDERED this 2nd day of March, 2017.

Janis Graham Jack
Senior United States District Judge